## ANNIE D. WILSON v. W. A. P. WILSON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BEDFORD COUNTY.

Argued May 13, 1890—Decided November 3, 1890.
[To be reported.]

(*a*) Upon a rule to open a judgment, the court framed an issue to determine whether the judgment was given in part as an indemnity to the plaintiff against indorsements for the defendant, and, if so, to what extent; how much the plaintiff had paid on such indorsements, and how much she continued liable for by reason thereof.

(*b*) Pending these proceedings, the plaintiff issued a scire facias to revive the lien of the judgment. Defence thereto was made upon the ground that the judgment was held as a collateral security for certain liabilities which had been discharged. In the issue framed by the court, the jury, by direction of the court, found a verdict "for the plaintiff:"

1. That verdict was an adjudication that the plaintiff was entitled to recover at the time it was rendered; wherefore, it was error for the court, on a subsequent trial of the issue joined upon the scire facias, said verdict then standing upon the record undisturbed, to submit the question whether the liability of the defendant had been discharged prior thereto.

Statement of Facts.

2. When the question in issue is as to the truth of the defendant's allegation that a judgment was given as collateral security for certain liabilities, previous declarations of the defendant, inconsistent with such a defence, are competent evidence against him, as admissions of a party; they are competent, also, to affect his credibility, if inconsistent with his testimony on the trial.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 290 January Term 1890, Sup. Ct.; court below, No. 33 November Term 1887, C. P.

On October 9, 1882, a judgment for $19,006, in favor of "Annie D. Wilson, for self and in trust," and against A. Porter Wilson and William A. P. Wilson, was entered in the court below upon a judgment note, dated the same day, and signed by the defendants. On October 12, 1882, the plaintiff assigned $2,293.45 of the judgment to John Mitchell. The part of it so assigned was afterwards paid to Mitchell and satisfied.

On February 17, 1887, on petition of W. A. P. Wilson, one of the defendants, alleging that his signature to the judgment note had been procured by fraud and without consideration, a rule to show cause why the judgment should not be opened and said defendant let into a defence was awarded. Depositions were taken under the rule by both parties, and on September 6, 1887, the court, BAER, P. J., filed an opinion as follows:

The allegation of fraud made by the defendant falls by so great a preponderance of evidence that I am of opinion the court above would promptly reverse for opening on this ground. It is not a question what might a jury do under an allegation of fraud supported by such evidence, but what should it do. I conceive it would be my duty to say to them that such evidence does not prove fraud. On this view of the case, should the judgment be opened on any other ground of defence? . . . .

Though the petition does not allege that any part of the note was given as indemnity or as collateral, the evidence as a whole does now very clearly show that a part of the consideration of the note was the risk assumed by the plaintiff in becoming indorser for the defendants, and that the note in part was given as indemnity for indorsements made to D. Caldwell for $2,948 and to the First National Bank for $10,000; and, though

it does not appear how much, if any, has been paid by plaintiff, the evidence discloses the fact that some of it was paid by money raised on a joint mortgage of defendants and the plaintiff, and that if no part of the principal has been paid a large amount of interest has been, but by whom, especially how, does not appear.

As the plaintiff's witness, Mr. Caldwell, at whose instance the note was given, testifies to the fact that the note in part was for indemnity, as does one of the defendants, I deem so much of the judgment as covers the amount of indorsements to be a proper subject of inquiry, and therefore make the rule so far absolute as to permit inquiry into the amount paid by plaintiff on account of said indorsements, if any, and the amount for which by virtue of her said indorsements she remains liable, excluding all else from the investigation, the issue to be made in such way as will raise the question to be tried; the lien of the judgment to remain, and so much of the judgment as appears to have been assigned to John Mitchell, by consent of all the parties, to stand unaffected by this ruling.

—Subsequently the court made an order directing that the issues to be tried should be as follows:

1. How much, if any, of the note in suit at the date thereof was for indemnity on account of certain indorsements made by plaintiff for the defendants, or either of them, to wit, on a note to D. Caldwell for $2,948, and on a note to the First National Bank for $10,000.

2. How much, if any, has the plaintiff paid upon said notes by reason of her indorsements.

3. How much, if any, is she still held responsible for on account of her indorsements of the said notes of $2,948 and $10,000.

On September 13, 1887, the plaintiff issued a scire facias to revive the lien of the judgment. W. A. P. Wilson made defence thereto, filing pleas which were not given in the paperbooks.

On November 28, 1888, the issue framed by the court under the rule to open the judgment, and the issue joined in the scire facias suit, were tried before the same jury. On the former issue, the jury by direction of the court rendered the following

Statement of Facts.

verdict: " We, the jury, have considered and duly passed on the question raised by the issues in this case, and (the trial on the scire facias to revive judgment pending before us at the same time, in which we will hereafter deliver a verdict,) we therefore find for the plaintiff on the issues joined in this case."

The issue upon the scire facias being submitted by the court to the jury, the latter found a verdict for the defendant, W. A. P. Wilson, but the court afterwards made absolute a rule for a new trial in that case.

At the second trial of the scire facias on April 23, 1889, the defendant, W. A. P. Wilson, presented testimony tending to prove that the plaintiff and the defendants, who were the heirs of General A. P. Wilson, deceased, and as such were the owners of certain lands in Huntingdon and Bedford counties, raised the sum of $20,000, by a mortgage of their lands in Huntingdon county, for the purpose of paying debts due from General Wilson's estate; that the plaintiff agreed to satisfy her judgment when that money should have been applied to those debts, and that it was so applied.

W. A. P. Wilson, having stated, while testifying upon his own behalf, that, according to his understanding and as the matter was explained to him after the judgment in controversy was entered, the purpose for which it was given was that it should be used to raise money to meet pressing debts of the estate, he was asked upon cross-examination whether he did not say to Mr. Caldwell, after the entry of this judgment, that he did not sign the note on which the judgment was entered; this for the purpose of showing that the judgment was not given as collateral.

Objected to.

By the court: Objection sustained; exception.[10]

The plaintiff presented testimony tending to disprove the testimony of the defendant. The deposition of W. A. P. Wilson, taken upon the rule to open the judgment, was offered for the purpose of contradicting him on the allegation that this judgment was held as collateral, by showing that his statements were inconsistent.

Mr. Hall: The statement was made that the note was signed in blank; we object, first, that the question of how the note was originally given, the purpose for which it was originally

Charge of Court below.

given, the $19,000 note, is no part of this case; second, that they introduced that in a cross-examination of William Wilson and they are bound by his answer; third, the original transaction of the note, which we allege was given in blank and filled up by A. Porter Wilson with the name of Annie Wilson in as payee, was not allowed to be inquired into on our side, and it cannot be brought in in this way, unless we are allowed a fair opportunity to explain the nature of this transaction; fourth, the evidence is irrelevant and incompetent in this issue.

Mr. Reynolds: I offer it also in contradiction of the witness on the stand, that he testified before the magistrate that there was an agreement between him and his sister that this should be collateral.

By the court: If we were to admit this, they would have a right to ask about other matters in this same deposition. We would have to rule that out.

Mr. Reynolds: We offer only the part that is marked on the left margin; then I offer a portion as to his conversation with John Mitchell in procuring this assignment.

Mr. McNeil: There is no contradiction in that.

By the court: We do not recollect that this witness says that the note was given as collateral, but that it was held as collateral. We shall exclude this testimony; exception.[11]

There was testimony tending to show that Miss Wilson had assigned $1,000 of the judgment to Mr. D. Caldwell, and that W. A. P. Wilson was present at the time this assignment was executed, and said nothing on that occasion about the judgment being held as collateral.

At the close of the testimony, the court, BAER, P. J., charged the jury in part as follows:

. William A. P. Wilson makes defence and alleges, not that the judgment was paid directly in money or anything else to Annie D. Wilson, the plaintiff, but that it has been satisfied. He says that Annie agreed that the judgment should be satisfied upon the payment of certain debts existing in Huntingdon county and so much of this judgment as had been assigned to John Mitchell, by the proceeds of a $20,000 mortgage, given by her brothers and herself upon certain Huntingdon county lands owned by them jointly. . . . . .

Charge of Court below.

It is further alleged on the part of the defence that the judgment was held in trust as a collateral security, and that it was so considered and understood by the parties to the judgment.

The records show that the judgment stands in favor of Annie D. Wilson, " for self and in trust," but it does not show in trust for whom.   On the face of it, it shows a valid judgment in favor of Annie herself, and in her favor as a trustee for somebody. She is the legal plaintiff, suing for herself and the persons covered by this trust, and can maintain the suit; and, unless the defence has shown that the original purpose of the judgment note was that of collateral security only, it would stand as a valid unconditional judgment, held for herself and in trust, and the plaintiff would be entitled to recover, for herself and as trustee, for such sum as remains unpaid and unsatisfied.

The only satisfaction alleged is that of the payment, out of the mortgage moneys, of certain existing judgments against Annie D., William A. P., and A. Porter Wilson in Huntingdon county.   But, though such judgments were paid, it was a payment by moneys raised on a mortgage binding the lands of each of them alike.   It was not by moneys raised only on the lands of the two defendants alone; and this payment would not operate as a satisfaction of Annie's judgment, unless the original purpose of the judgment was that of a collateral security for the payment of the Huntingdon county judgments. . . . .

From what we have said, you will see that, as no actual payment has been proved, though this question is for you, the question on which the case turns is whether the original purpose of the judgment note given to Annie, and on which this judgment was entered, was that of collateral security; and if a collateral security, whether the persons and debts intended to be protected by the collateral have since been paid or satisfied. We repeat that.   We say, the question turns on this: Whether the original purpose, in giving the note on which this judgment was entered, was that of collateral security, and if a collateral security, whether the persons or debts intended to be protected thereby have since been paid or satisfied. . . . .

We are asked to charge you on some points which have been submitted to us by counsel for plaintiff and for defendant. We take the points of the plaintiff first, who asks us to say:

1. That, under all the evidence in this case, the verdict must be for the plaintiff, Annie D. Wilson.

Charge of Court below.

Answer: This we refuse, for the reason that there are certain matters of fact in this case for you to determine.[1]

3. That the validity of the judgment in suit, and the fact that it was not given as collateral, having, in the issues framed by and tried in this court been judicially determined, the jury must take it as established now, beyond controversy, that the judgment was not given as collateral.

Answer: This we refuse. That question is still an open question for you to pass on.[2]

Now, we are asked to charge you on certain points by the defendant, as follows:

1. If the jury believe that the judgment of Annie D. Wilson v. William A. P. Wilson, for $19,006, was held upon an agreement or arrangement between her and him that the said judgment should stand as collateral security for certain indebtedness of the estate of General A. P. Wilson, deceased, of which estate Annie D. Wilson, A. Porter Wilson and William A. P. Wilson were the heirs, and which indebtedness has been actually paid since the date and entry of said note, then the verdict should be for the defendant, William A. P. Wilson.

Answer: This point we affirm, if the jury find that the judgment note, as originally given, was, at the time it was made, given for the purpose of a collateral security; but if not originally given as collateral, any subsequent arrangement to hold it as collateral, without a consideration shown as passing to Annie, the plaintiff, would not, as between Annie and William, be sufficient to defeat a recovery. [The court reads the point again and then says:] This is affirmed, if the jury find that the judgment note, as originally given, was, at the time, given as collateral security, but if not, any subsequent agreement to hold it as collateral, without consideration, would not be sufficient to defeat a recovery by the plaintiff.[7]

But, if the evidence is believed, $1,000 of this judgment was assigned to Mr. Caldwell, one of the plaintiffs, in the presence of the defendant, William A. P. Wilson, without objection by him. He is, therefore, estopped from setting up a defence to the Caldwell part of the judgment, and for the Caldwell part, at least, the plaintiff would be entitled to a verdict.

If the judgment in favor of Annie has not been paid, and was not held as collateral, then the verdict would be for the

Arguments.

plaintiff for the amount of her judgment, less the amount which had been assigned to Mr. Mitchell, with interest from the time it was entered. This is the question in this case.

The jury returned a verdict for the defendant, the court sent them back, after repeating the instructions given in the charge respecting the part of the judgment assigned to D. Caldwell, but they again returned a verdict for the defendant. Afterwards, the court made the following ruling upon a motion of the plaintiff for a new trial:

This cause was twice tried, and at each trial the verdict was for the defendant. A new trial is again asked. As a juror, the court would not have found as the jury did; but this alone is not a sufficient reason for a new trial now. So far as concerns the questions of law raised in the motion, we deem it best to let a higher tribunal pass on the questions raised. Imperative instructions were given, or meant to be given, as far as relates to the part of the judgment assigned to D. Caldwell, Esq., and these the jury either disregarded or did not comprehend. In either case, the error caused thereby should be corrected. We therefore grant a new trial, unless the defendant assents, by writing to be filed in the case within fifteen days, that judgment shall be entered in favor of Annie D. Wilson, use of David Caldwell, for the sum of $1,314, with all costs, as of the date of the verdict and notwithstanding the verdict, being the amount of the judgment assigned to said Caldwell on February 2, 1884, with interest to the date of the verdict.

—The defendant filed the writing specified in the order of the court, and judgment was entered in accordance therewith, whereupon the plaintiff took this appeal, assigning for error, inter alia:

1, 2. The refusal of plaintiff's points.[1] [2]

7. The answer to defendant's point.[7]

10, 11. The refusal of plaintiff's offers.[10] [11]

*Mr. John M. Reynolds* (with him *Mr. David Caldwell* and *Mr. Alexander King*), for the appellant:

1. The court erred in submitting to the jury, without a particle of sustaining evidence and against the evidence on both sides, whether the judgment was originally given as collateral

Arguments.

security for the debts in Huntingdon county: Hyatt v. Johnston, 91 Pa. 200; Selser v. Roberts, 105 Pa. 245. Moreover, that question was determined against the defendant on the proceeding to open the judgment. By the verdict in favor of the plaintiff on the issues framed by the court, the defendant's mouth was closed on that point, and nothing was left as a defence but the question of a satisfaction, pure and simple, since the rendition of the judgment. The defendant cannot attempt to avoid the want of consideration for the alleged agreement of the plaintiff, after the judgment was entered, to hold it as collateral, by tacking to the promise the assertion that the judgment was originally void for want of consideration: Kincade v. Cunningham, 118 Pa. 501.

2. We should have been allowed to ask the defendant whether he did not tell Mr. Caldwell, after the entry of the judgment, that he did not sign the note. If he had admitted saying so, it would have been plain that the note could not have been given or held as collateral security, as such an admission would have destroyed the whole theory of the defence. If he had answered in the negative, a contradiction on this point, so vital, would have gone to his credibility. In his testimony, given on the rule to open the judgment, the defendant was sworn to an averment that the note was signed in blank; that his signature was obtained by his co-defendant upon the representation that it was to be filled up for some taxes and costs due in Bedford county, and without his having had any conversation with the plaintiff about giving her a note for anything. That testimony was an absolute contradiction of the theory that the note was given as collateral security for the Huntingdon county debts, and should have been admitted.

*Mr. William M. Hall* (with him *Mr. William M. Hall, Jr., and Mr. M. M. McNeil*), for the appellee:

1. On the trial of the issues framed under the rule to open the judgment, the court ordered the jury to find a verdict for the plaintiff, for the reason that all the matters alleged by the defendant could be tried and determined in the scire facias, saying to them: "But to prevent your verdict from being afterwards considered as set up, or from being considered as res judicata on the question of collateral security, we direct you to

Opinion of the Court.

return a verdict in the first case, which we will write and send out with you." On the second trial of the scire facias, the defendant clearly showed that, by reason of matters occurring since the entry of the judgment, the purposes for which the note was held by the plaintiff had been served, and it was equitably paid. We do not believe it is the law that on the trial of a scire facias evidence cannot be given to explain what the original judgment was given for. The leading case on this subject, Cardesa v. Humes, 5 S. & R. 65, simply rules that the defendant cannot set up a defence which he might have made in the original suit.

2. But the defendant may show that the plaintiff is attempting, in violation of an agreement, to use the judgment for a purpose not contemplated at the time it was given, as by showing that the judgment sought to be revived was given upon a promise to cancel it on the occurrence of an event which has since taken place : Hartzell v. Reiss, 1 Binn. 289. The assertion that the court submitted to the jury the original purpose of the judgment, without evidence and against the evidence on both sides, is utterly fallacious. There was evidence from which the jury could find that it was always held as collateral. The verdict for the plaintiff in the proceeding to open the judgment did not settle this question. It established nothing, but was taken pro forma, merely to simplify the case, the court directing in the charge to the first jury that it should not be set up as res judicata. The rejected offers of the plaintiff were made to contradict the defendant in his statement, that his sister's explanation to him was that the judgment was held as collateral. The testimony offered had no bearing on this point.

OPINIONS, MR. JUSTICE WILLIAMS :

This is an anomalous record. It shows two verdicts, one for the plaintiff, and the other for the defendant on the same question, both of which stand undisturbed.

It appears that a judgment was regularly entered in 1882 in favor of "Annie D. Wilson, for self and in trust," against her brothers, A. Porter Wilson and W. A. P. Wilson, for $19,006. The plaintiff and the defendants were the heirs at law of General Wilson, deceased, from whom they inherited a large estate in Bedford and Huntingdon counties. Three days after the

judgment was entered, the plaintiff, at the request of the defendants, assigned $2,293.45 of the principal to John Mitchell, a creditor of the defendants. Two years later, she assigned $1,000 to D. Caldwell, with the knowledge of the defendants, and without objection from them. Nothing more was done until February, 1887, when W. A. P. Wilson applied for a rule to open the judgment as to himself, on an allegation that it was obtained from him by fraud. After a full hearing, the court found against the defendant on the question of fraud, but opened the judgment and directed an issue to be framed for trial before a jury to determine other questions suggested by the testimony. These were: First, how much, if any, of the note on which judgment was entered was given to indemnify the plaintiff against indorsements made by her for the defendants, or either of them? Second, how much has she paid on account of such indorsements? Third, how much does she continue liable for by reason of such indorsements? Pending these proceedings, a scire facias to revive and continue the lien of the judgment was issued. No defence was made by A. P. Wilson, and judgment was taken against him, but W. A. P. Wilson made an affidavit of defence, and pleaded to the scire facias. It so happened that the feigned issue directed by the court, and that made by the parties in the scire facias, came upon the same trial list at the November term, 1888. The feigned issue was first reached and a trial entered upon, when the court ordered that the same jury be sworn also in the other case, and that the cases be tried together. They were so tried. When the evidence closed, the learned judge directed the jury to return a verdict for the plaintiff in the feigned issue, in the following form: "We, the jury, have considered and duly passed on the questions raised by the issues in this case, and (the trial on the scire facias to revive judgment pending before us at the same time, in which we will hereafter deliver a verdict,) we therefore find for the plaintiff in the issue joined in this case." After this verdict was taken, the court submitted the questions raised on the scire facias to the same jury, and they found for the defendant.

These verdicts were plainly contradictory. The first was substantially a finding that the note, if given as an indemnity to the plaintiff, was for no more than she had suffered or was liable to suffer on account of her indorsements, and that she

was therefore entitled to recover. The last one was a finding that it was so given, but that the plaintiff had suffered nothing, and was entitled to recover nothing. A motion was promptly. made to set aside the last verdict, and on the 29th January, 1889, this was done, but the first verdict was left to stand. The scire facias was again reached for trial at the April term, 1889. On the trial, the order of the court opening the judgment and directing the issue, and the verdict rendered therein, were given in evidence. The court was then asked to instruct the jury that the verdict was conclusive on the defendant upon the questions of the consideration of the judgment and the amount due upon it at the time when it was rendered. This the court declined to do, and again submitted both questions to the jury, except as to the sum of $1,000 assigned to D. Caldwell, which they were told the plaintiff was entitled to recover. The jury, however, found for the defendant. The court sent them back with a fresh reminder of the instructions in regard to the amount assigned to Caldwell. They again returned with a verdict for the defendant. A motion was made to set aside the verdict, but the court refused the motion saying: "As a juror, the court would not have found as the jury did, but this alone is not sufficient reason for a new trial now. . . . . Imperative instructions were given, or meant to be given, as far as relates to the part of the judgment assigned to D. Caldwell, Esq., and these the jury either disregarded or did not comprehend. In either case, the error caused thereby should be corrected;" and he required the defendant to correct it on the record, but he left the verdict so corrected to stand.

Our question is over the effect of the first verdict. It was rendered upon the trial of an issue framed for the purpose of determining whether the plaintiff was entitled to recover the whole amount appearing to be due upon her judgment, and it was a distinct finding that she was so entitled. The court seems to have been satisfied with the verdict. It framed it for the jury. It subsequently set aside the contradictory verdict rendered by the same jury, leaving this to stand as a disposition of the issue. How is it possible to disregard it? It is upon the same questions, between the same parties, and in the same proceeding. So long as it stands, it is an adjudication that the plaintiff was entitled to recover at the time when it was

Opinion of the Court.

rendered.   The only defence that can be made to the judgment, under such circumstances, is payment made or arising out of circumstances happening since the rendition of the first verdict.   If the situation of the record is due to any oversight on the part of the court below in leaving the first verdict undisturbed, the remedy is in the hands of that court; but, if it is due to the obstinacy or obliquity of jurors, the learned judge ought not to hesitate to set their verdicts aside as often as they are rendered.   The question, which the record shows to be settled on the trial of the feigned issue, should not be again submitted on the trial of the scire facias, so long as the first verdict stands.   If that should be set aside, we see no reason why the same questions might not be reached and disposed of on the trial of the scire facias.   If the judgment was given to indemnify the plaintiff against indorsements that have since been provided for, without calling on her for payment, such facts would amount to payment and constitute a good defence. The difficulty in the defendant's way now is, that there is a verdict on the record disposing of these questions against him.

It was also error to exclude the defendant's previous declarations in relation to the subject under investigation.   If he was a witness, declarations previously made, inconsistent with his testimony, would be competent to affect his credibility.   If not a witness, he was nevertheless a party, and the declarations of a party in relation to the matters set up as a defence by him are competent evidence against him.

The learned judge submitted to the jury the question whether " the judgment note as originally given was at the time given as collateral security," with instructions that if they so found, and further found that the indebtedness against which it was intended to provide had been since paid by the heirs of General Wilson, their verdict should be for the defendant.   Assuming that the question submitted was an open one, notwithstanding the first verdict, as the court did, we do not see why the affidavit of the defendant, in which he distinctly asserted that it was given for an entirely different purpose, was not competent evidence.

> The judgment entered in the court below is reversed, and a venire facias de novo awarded.